Case 3:25-cv-00023-JHY-JCH   Document 1   Filed 04/17/25   Page 1 of 17
Pageid#: 1

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
April 17, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
     DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| JOHN DOE,<br><br>      Plaintiff,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security; the DEPARTMENT OF HOMELAND SECURITY; and TODD LYONS, in his Official capacity as Acting Director of U.S. Immigration and Customs Enforcement,<br><br>      Defendants. | No.  3:25cv00023 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.  Plaintiff John Doe is a full-time international student in lawful F-1 status, enrolled as a graduate student at the University of Virginia. Like hundreds of F-1 students nationwide, his SEVIS record has been abruptly and unlawfully terminated by U.S. Immigration and Customs Enforcement (ICE) in the past two weeks. This unlawful action has effectively stripped these individuals of their ability to remain a student in the United States. Across the country, federal district court judges have been granting temporary restraining orders to curtail this abuse of power. *See, e.g.,* Temporary Restraining Order (Dkt. 9), *Wu v. Lyons*, No. 1:24-cv-01979 (E.D.N.Y. Apr. 9, 2025); Order and Opinion (Dkt. 7), *Isserdasani v. Noem*, No. 25-cv-00283 (W.D. Wis. Apr. 14, 2025); Temporary Restraining Order (Dkt. 8), *Zheng v. Lyons*, No. 25-c-10893 (D. Mass Apr. 11, 2025); Order (Dkt. 13), *Liu v. Noem*, No. 25-cv-00133 (D.N.H. Apr. 7, 2025).

2. The Student and Exchange Visitor Information Systems (SEVIS) is a government database that tracks international students' compliance with their F-1 status. ICE, through the Student and Exchange Visitor Program (SEVP), uses SEVIS to monitor student status. On April 4, 2024, plaintiff's "Status" in the system was changed to "TERMINATED." Following the revocation of their visa, SEVP terminated Plaintiff's SEVIS record and marked Plaintiff as "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated."

3. The termination of a SEVIS record effectively ends F-1 student status. Even when a visa is revoked, however, ICE is *not* authorized to terminate Plaintiff's student status. The grounds cited by ICE in the SEVIS termination do not provide legal authority to terminate Plaintiff's SEVIS record. An F-1 visa controls a student's entry into the country, not their continued lawful presence once admitted. Plaintiff was in full compliance with the terms of their F-1 status and had not engaged in any conduct that would warrant termination of their status.

4. Rather, DHS's policy of unlawfully terminating SEVIS records based on purported visa revocations appears to be designed to coerce students, including Plaintiff, into abandoning their studies and "self-deporting" despite not violating their status. And, indeed, on April 10, 2025, plaintiff received an email from the U.S. Embassy in his home country apparently calculated to do just that—including an implicit threat to deport him to a country *other* than their country of origin:

> The Bureau of Consular Affairs Visa Office has alerted the Department of Homeland Security's Immigration and Customs Enforcement, which manages the Student Exchange Visitor Program and is responsible for removal proceedings. They may notify your designated school official about the revocation of your F-1 visa.
> Remaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not

allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin.

5.      If ICE believes a student is deportable for having a revoked visa, it has the authority to initiate removal proceedings and make its case in court. It cannot, however, misuse SEVIS to circumvent the law, strip students of status, and drive them out of the country without process.

6.      Over the past two weeks, illegal visa revocations and SEVIS terminations have shaken campuses across the country.[1] The SEVIS terminations have taken place against the backdrop of extraordinary circumventions of due process in the immigration context, and demands being made of universities by the federal government and threats of cutting off billions of dollars in federal funding. They have created chaos as schools have attempted to understand what is happening and do their best to inform and advise students.

7.      In recent days, in response to a series of federal district court judges granted temporary restraining orders, the Government has begun arguing in some similar cases that although they have unilaterally deleted student records from the SEVIS system, they have not *really* altered an F-1 student's "status." (This development is, in some ways, welcome: The Government should join Plaintiff's request for declaratory relief.) But in response, one federal judge responded on April 16, 2025 as follows:

> THE COURT:    Do you realize that this is Kafkaesque? I've got two experienced immigration lawyers on behalf of a client who is months away from graduation, who has done nothing wrong, who has been terminated from a system

---

[1] Andrew Kreighbaum, *Lawsuits Over Foreign Students' Status Find Solid Legal Footing*, BLOOMBERG LAW, APR. 15, 2025, at https://news.bloomberglaw.com/daily-labor-report/lawsuits-over-foreign-students-status-find-solid-legal-footing; Annie Ma, *International students file legal challenges oer widespread US visa revocations*, ASSOCIATED PRESS, Apr. 14, 2025, at https://apnews.com/article/f1-visa-international-college-student-trump-9d4d900d328a0c205503c1178e70f1d5/.

that you all keep telling me has no effect on his immigration status, **although that clearly is BS.** And now, his two very experienced lawyers can't even tell him whether or not he's here legally, because the Court can't tell him whether or not he's here legally, because the government's counsel can't tell him if he's here legally.

Tr. of Hr'g (Apr. 16, 2025) (emphasis added), *Patel v. Lyons*, No. 25-cv-01096 (D.D.C.); *see also* Minute Order (Apr. 16, 2025) ("For the reasons stated on the record at today's motions hearing, the Court will grant Plaintiff's 2 Motion for Temporary Restraining Order. The Court ORDERS the parties to submit, by 10:00 AM tomorrow, proposed language for the temporary restraining order that aligns with this afternoon's discussion. The Court further ORDERS Defendant to take all steps to reinstate Plaintiff's SEVIS record as soon as possible. Defendant shall not wait for the Court's written order and must act expeditiously to restore Plaintiff's status.").

8. Plaintiff brings this action under the Administrative Procedure Act (APA), the Fifth Amendment to the U.S. Constitution, and the Declaratory Judgment Act to challenge ICE's illegal termination of his SEVIS record and his lawful status within the United States. He additionally seeks review of the purported termination of his F-1 visa, a separate and distinct issue from the termination of his status.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the present action based on 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346(b) (federal defendant), and 28 U.S.C. § 2201-2 (authority to issue declaratory judgment when jurisdiction already exists).

9. Venue is properly with this Court pursuant to 28 U.S.C. § 1391(e) because this is a civil action in which Defendants are employees or officers of the United States, acting in their official capacity; and because Plaintiff resides in Charlottesville, Virginia, which is located within the Western District of Virginia, and there is no real property involved in this action.

## PARTIES

10. John Doe is an international student who is enrolled in a graduate program at the University of Virginia. He seeks to proceed in this action with a pseudonym due to fear of retaliation, harassment, or blacklisting by Defendants or others for asserting his rights through this lawsuit.[2]

11. Defendant U.S. Department of Homeland Security ("DHS") is a cabinet-level department of the Executive Branch of the federal government and is an "agency" within the meaning of 5 U.S.C. § 551(1). DHS includes various component agencies, including U.S. Immigration Customs and Enforcement ("ICE").

12. Defendant Kristi Noem is the Secretary of Homeland Security and has ultimate authority over DHS. In that capacity and through her agents, Defendant Noem has broad authority over the operation and enforcement of the immigration laws. Defendant Noem is sued in her official capacity.

13. Defendant Todd Lyons is the Acting Director of ICE and has authority over the operations of ICE. In that capacity and through his agents, Defendant Lyons has broad authority over the operation and enforcement of the immigration laws. Defendant Lyons is sued in his official capacity. ICE is responsible for the termination of John Doe's SEVIS record.

## LEGAL FRAMEWORK

14. A nonimmigrant visa controls a noncitizen's admission into the United States, not their continued stay. Congress established a statutory basis for student visas under 8 U.S.C.§ 1101(a)(15)(F)(i), requiring that a noncitizen engage in a full course of study to maintain

---

[2] Plaintiff will file a motion to proceed pseudonymously immediately upon the filing of this Complaint.

nonimmigrant status. Once admitted in F-1 status, a student is granted permission to remain in the United States for the duration of status as long as he continues to meet the requirements established by the regulations governing their visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment.

15. The SEVIS is a centralized database maintained by the SEVP within ICE used to manage information on nonimmigrant students and exchange visitors and track their compliance with terms of their status. Under 8 C.F.R. § 214.3(g)(2), Designated School Officials (DSOs) must report through SEVIS to SEVP when a student fails to maintain status. SEVIS termination is governed by SEVP policy and regulations. Termination must be based on a student's failure to maintain status.

16. DHS regulations distinguish between two separate ways a student may fall out of status: (1) a student who "fails to maintain status," and (2) an agency-initiated "termination of status."

17. The first category, failure to maintain status, involves circumstances where a student voluntarily or inadvertently falls out of compliance with the F-1 visa requirements, for example by failing to maintain a full course of study, engaging in unauthorized employment, or other violations of their status requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. §§ 214.1(e)–(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitutes a failure to maintain status."

18. With the respect to the crime of violence category, 8 C.F.R. § 214.1(g) sets forth that a nonimmigrant's conviction "for a crime of violence for which a sentence of more than one

6

year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status . . . ." Minor misdemeanor convictions (and certainly not minor misdemeanor arrests from a decade prior) do not meet this threshold for termination based on criminal history.

19. The second category, termination of status by DHS, can occur only under the limited circumstances set forth in 8 C.F.R. § 214.1(d). There are three circumstances when DHS may terminate status: (1) a previously granted waiver under INA § 212(d)(3) or (4) [ 8 U.S.C. § 1182(d)(3) or (4)] is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. DHS cannot otherwise unilaterally terminate nonimmigrant status. *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 n.100 (3d Cir. 2019) ("[I]t is easy to see why the students desire review—DHS appears to have terminated their F-1 visas without the statutory authority to do so. As discussed above, the ability to terminate an F-1 visa is limited by § 214.1(d). That provision states . . . [listing three circumstances and citing 8 C.F.R. § 214.1(d)]. None of those mechanisms were employed in this case.").

20. Accordingly, the revocation of an F-1 visa does not constitute "failure to maintain status" and cannot therefore be a basis for SEVIS termination. A SEVIS record may not be terminated as a result of a visa revocation after a student has been admitted into the United States, because the student is permitted to continue the authorized course of study.

21. ICE's own guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record."[3] Rather, if the visa is revoked, the student is

---

[3] ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf

permitted to pursue their course of study in school, but upon departure, the SEVIS record is terminated and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States.[4]

22.     While a visa revocation can be charged as a ground of deportability in removal proceedings, deportability *can* be contested in such proceedings.[5] The immigration judge may dismiss removal proceedings where a visa is revoked, so long as a student is able to remain in valid status.[6] Only when a final removal order is entered would status be lost.

23.     A student who has not violated their F-1 status, even if their visa is revoked, cannot have a SEVIS record terminated based on INA § 237(a)(1)(C)(i) [8 U.S.C. § 1227(a)(1)(C)(i)] (failure to maintain status), INA §237(a)(4)(C)(i) [8 U.S.C. § 1227(a)(4)(C)(i)] (foreign policy grounds), or any deportability ground for that matter.

24.     The immigration courts have no ability to review the SEVIS termination here because the process is collateral to removal.[7] There is also no administrative appeal of a denial to reinstate F-1 status. The termination of a SEVIS record constitutes final agency action for purposes of APA review.[8]

## FACTUAL ALLEGATIONS

---

[4] *See* Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016), available at https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

[5] 8 U.S.C. § 1227(a)(1)(B) ("Present in violation of law" as grounds for deportability); 8 U.S.C. § 1201(i) (authorizing judicial review of visa revocation "in the context of a removal proceeding if such revocation provides the sole ground for removal").

[6] 8 C.F.R. § 1003.18(d)(1)(ii)(B) (authorizing termination of removal proceedings where the "noncitizen is prima facie eligible for . . . lawful status").

[7] *See Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995, 1007 (9th Cir. 2024); *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 183 (3d Cir. 2019).

[8] *See Jie Fang,* 935 F.3d at 185.

8

25.     John Doe is an international student enrolled as a full-time student in the first year of a graduate program at the University of Virginia. He received his bachelor's degree from a large public university in the American Midwest. But he was born in and remains a citizen of a country in Latin American (that is not El Salvador).

26.     Doe has lawfully visited and lawfully studied in the United States intermittently since 2009. Most recently, he applied for and received an F-1 visa to pursue graduate school, with classes beginning in the fall of 2024.

27.     Plaintiff has spent the past academic year focused on his studies and has not engaged in any significant political activity. Plaintiff has never been contacted by ICE or other immigration authorities, never received a "Notice to Appear (NTA) in immigration court," and has never been detained by ICE or CBP.

28.     Plaintiff has, briefly and lawfully, traveled internationally and reentered the United States without incident as recently as March 13, 2025.

29.     On April 4, 2025, Plaintiff's life was upended when University officials informed him that a check of SEVIS revealed that his status had been "TERMINATED." The "TERMINATION REASON" provided was: "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." At that time, Plaintiff had received no notice of any visa revocation from any government official, though Plaintiff was informed by University officials that UVA had not undertaken any action to terminate Plaintiff's SEVIS status.

30.     On April 10, 2025, Plaintiff received an email from the Consular Section of the U.S. Embassy in another Latin American country (not Plaintiff's country of origin). It read in relevant part:

> The Bureau of Consular Affairs Visa Office has alerted the Department of Homeland Security's Immigration and Customs Enforcement [of your visa revocation], which manages the Student Exchange Visitor Program and is responsible for removal proceedings. They may notify your designated school official about the revocation of your F-1 visa.
>
> Remaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin.
>
> Given the gravity of this situation, individuals whose visa was revoked may wish to demonstrate their intent to depart the United States using the CBP Home App…

31.    The language in the email mirrors language in public statements from DHS officials, both before and after Plaintiff received the email, encouraging non-citizens to "self-deport."[9]

32.    Plaintiff is unaware of the factual basis for the termination of his SEVIS status.

---

[9]    See DHS Press Release, *DHS Launches International Ad Campaign Warning Illegal Aliens to Self-Deport and Stay Out*, Mar. 15, 2025, at https://www.dhs.gov/news/2025/03/15/dhs-launches-international-ad-campaign-warning-illegal-aliens-self-deport-and-stay ("President Trump has a clear message: if you are here illegally, we will find you and deport you. You will never return. But if you leave now, you may have an opportunity to return and enjoy our freedom and live the American Dream."); The White House, *Illegal Aliens: Self-Deport with the CBP Home App*, Mar. 18, 2025 at https://www.youtube.com/watch?v=lc9IC2wUh8A; Julia Ainsley, *Trump admin pushing immigrants to self-deport as its deportation numbers lag*, NBC NEWS, Apr. 15, 2025, at https://www.nbcnews.com/politics/national-security/trump-admin-pushing-immigrants-self-deport-deportation-numbers-lag-rcna201099 ("[T]hree sources familiar with the discussions told NBC News that the relatively slow pace of deportations has led the Department of Homeland Security, which ICE is part of, to push self-deportation . . . 'There's an acknowledgment they can't get the numbers up if they have to find, arrest, detain and fly all of these people home. So they have to push for self-deportation,' said one of the sources familiar with the discussions. Asked for comment, DHS spokesperson Tricia McLaughlin said in a statement: ' . . . This is just the beginning. We are unleashing DHS law enforcement that has had its hands tied behind its back for four years under [former President Joe] Biden and [former Homeland Security Secretary Alejandro] Mayorkas. . . . Illegal aliens are hearing Secretary [Kristi] Noem's message [encouraging 'self-deportation'] loud and clear: leave now or face the consequences.'").

33. Plaintiff's only criminal history is an incident from a decade ago when Plaintiff was in college in the United States. Plaintiff was assaulted at a well-known college bar, but rather than arresting his assailant, police arrested Plaintiff on suspicion of violating the municipal misdemeanor "battery" ordinance (carrying a maximum 180-day jail term). Plaintiff maintains that he acted in self-defense and pleaded not guilty. The charges were dismissed and in April 2024 a local judge signed an expungement order.

34. Plaintiff has never concealed or improperly failed to disclose his arrest to immigration or university officials. The foregoing was disclosed in its entirety when Plaintiff applied for his F-1 visa. It was known to government officials when his F-1 visa was issued and has never posed any problem when he engaged in international travel over the past decade.

35. DHS has not initiated removal proceedings against Plaintiff.

36. Plaintiff is highly valued by the University of Virginia, which desires for him to continue to be enrolled in school. However, Plaintiff's ability to do so is in jeopardy due to the termination of his SEVIS record and status.

37. Plaintiff is also severely hampered in his ability to seek a summer internship, which is an integral part of the academic program that Plaintiff is a part of. Plaintiff is unsure whether he can lawfully engage in such employment, and the deletion of his SEVIS record (and the possibility that Plaintiff could be arrested and deported at any moment) makes him a less attractive candidate to employers.

38. Since he received notice of SEVIS termination, Plaintiff has been experiencing high levels of stress and anxiety. He is unsure of what will happen to him. He also fears being falsely labeled a national security or foreign policy threat if he leaves the United States and seeks to return to the United States in the future, or if he seeks to travel to another country, because of

the labels attached to his SEVIS termination. He has been unable to attend class in person. He is scared to go to the grocery store or see friends.

39. The SEVIS terminations have created havoc and uncertainty for schools as well. Upon information and belief, University of Virginia was not given any advanced warning or further explanation for the termination of Plaintiff's SEVIS status. Schools are scrambling to respond to these unprecedented actions and determine whether and how they can help their international students.

40. Intervention by the Court is necessary to remedy Defendants' illegal conduct.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Administrative Procedure Act**
(*Unauthorized SEVIS Termination*)

41. Plaintiff incorporates the allegations in the paragraphs above as though fully set forth here.

42. Under § 706(a) of the APA, final agency action can be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D).

43. Defendants have no statutory or regulatory authority to terminate Plaintiff's SEVIS record or status based simply on revocation of a visa. Additionally, nothing in Plaintiff's criminal history or other history provides a basis for termination.

44. Therefore, Defendant's termination of Plaintiff's SEVIS status is not in accordance with law, in excess of statutory authority, and without observance of procedure required by law.

## SECOND CAUSE OF ACTION
### Fifth Amendment
(*Procedural Due Process*)

45. Plaintiff incorporates the allegations in the paragraphs above as though fully set forth here.

46. Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of property interests protected under the Due Process Clause of the Fifth Amendment.

47. Once a student is lawfully admitted to the United States in F-1 status and complies with the regulatory requirements of that status, the continued registration of that student in SEVIS is governed by specific and mandatory regulations. Because these regulations impose mandatory constraints on agency action and because SEVIS registration is necessary for a student to remain enrolled as an international student, Plaintiff has a constitutionally protected property interest in their SEVIS registration. See *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015) (recognizing protected property interest in participating in exchange visitor program); *Brown v. Holder*, 763 F.3d 1141, 1148 (9th Cir. 2014) (recognizing protected property interest in nondiscretionary application for naturalization)

48. Additionally, Plaintiff is a student at a public university who has a protected property interest in his continued education and ability to travel freely to and from class. Defendants' actions effectively deprive Plaintiff of those interests without due process of law.

49. Defendants terminated Plaintiff's SEVIS record and status based on improper grounds without prior notice and without providing Plaintiff an opportunity to respond. The failure to provide notice of the facts that formed the basis for the SEVIS termination is a violation of due process under the Fifth Amendment.

### THIRD CAUSE OF ACTION
### Administrative Procedure Act
*(Procedural Due Process)*

50. Plaintiff incorporates the allegations in the paragraphs above as though fully set forth here. Under § 706(a) of the APA, final agency action can be set aside if it is "contrary to a constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

51. Defendants terminated Plaintiff's SEVIS record based on improper grounds without prior notice and without providing Plaintiff an opportunity to respond. The failure to provide notice of the facts that formed the basis for the SEVIS termination is a violation of due process under the Fifth Amendment.

52. Accordingly, Defendants' action is contrary to a constitutional right.

### FOURTH CAUSE OF ACTION
### Administrative Procedure Act
*(Arbitrary and Capricious SEVIS Termination)*

53. Plaintiff incorporates the allegations in the paragraphs above as though fully set forth here.

54. Under § 706(a) of the APA, final agency action can be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," including if it fails to make a rational connection between the facts found and the decision made. 5 U.S.C. § 706(2)(A).

55. Defendants failed to articulate the facts that formed a basis for their decision to terminate Plaintiff's SEVIS status in violation of the APA, let alone any rational connection between the facts found and the decision made.

56. Defendants' action is therefore arbitrary and capricious.

### FIFTH CAUSE OF ACTION

## Fifth Amendment
(*Procedural Due Process*)

57. Plaintiff incorporates the allegations in the paragraphs above as though fully set forth here.

58. Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of property or liberty interests protected under the Due Process Clause of the Fifth Amendment.

59. The purported revocation of Plaintiff's F-1 visa, conducted without notice, opportunity to be heard, or any other form of process, violates the due process clause under the Fifth Amendment.

## SIXTH CAUSE OF ACTION
### Administrative Procedure Act
(*Visa Revocation*)

60. Plaintiff incorporates the allegations in the paragraphs above as though fully set forth here.

61. Under § 706(a) of the APA, final agency action can be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D).

62. The revocation of Plaintiff's F-1 visa—without any apparent rationale or legal basis—is not in accordance with law, arbitrary and capricious, and otherwise unlawful in violation of the Administrative Procedure Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Declare that the termination of Plaintiff's SEVIS status was unlawful and violated Plaintiff's Fifth Amendment due process rights and the APA.

(3) Declare that Plaintiff remains in lawful status;

(4) Vacate and set aside DHS's termination of Plaintiff's SEVIS status and issue an injunction ordering Defendants to restore Plaintiff's SEVIS record and status;

(5) Order that the revocation of Plaintiff's F-1 visa be reversed;

(6) Award costs and reasonable attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(b); and

(7) Grant such further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Kelly Orians

**Kelly Orians**
580 Massie Road
Charlottesville, VA 22903
T: (303) 946-5375
E: keorians@gmail.com

/s/ Tanishka V. Cruz

**Tanishka V. Cruz, Esq.**
Cruz Law, PLLC
4100 Olympia Circle, Suite 101
Charlottesville, VA 22911
T: (434) 260-0665
F: (434) 227-5067
E: tcruz@tcruzlaw.com

/s/ Thomas Frampton

**Thomas Frampton**
580 Massie Road
Charlottesville, VA 22903
T: (202) 352-8341
E: tframpton@gmail.com
*Application for admission pro hac vice pending*