CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
April 21, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| John Doe, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:25-cv-00023 |
| | ) |
| Kristi Noem, in her official capacity as | ) |
| Secretary of Homeland Security, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

John Doe[1] is a full-time international student currently enrolled in a graduate program at the University of Virginia. He has filed a complaint for declaratory and injunctive relief against Kristi Noem, in her official capacity as Secretary of Homeland Security, the Department of Homeland Security ("DHS"), and Todd Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), alleging that Defendants unlawfully terminated records of his F-1 nonimmigrant student status in the Student and Exchange Visitor Information System ("SEVIS").

This matter is before the court on Plaintiff's motion for a temporary restraining order (Dkt. 5). Plaintiff asks the court to temporarily enjoin Defendants from terminating his F-1 status under SEVIS, set aside Defendants' prior termination decision, order Defendants to reinstate his SEVIS record, and enjoin Defendants from detaining Plaintiff or transferring him

---

[1] On April 17, 2025, the court granted Plaintiff's motion for leave to proceed under a pseudonym in all public filings in this matter, as well as Plaintiff's motion to file certain exhibits under seal. (Dkt. 7.) Plaintiffs filed sealed, unredacted versions of those exhibits, which identify Plaintiff, on April 21, 2025.

out of the jurisdiction of the Western District of Virginia. For the reasons outlined below, the court grants a temporary restraining order pending a preliminary injunction hearing on May 1, 2025.

## I.   Background

### A. Statutory and Regulatory Background

The F-1 nonimmigrant visa authorizes international students to enter the United States to pursue courses of study at approved academic institutions. *See* 8 U.S.C. § 1101(a)(15)(F)(i). Once an international student enters the United States with an F-1 visa, they may remain in the country for their "[d]uration of status"—that is, as long as they maintain a full course of study or receive authorization to participate in "practical training" after completing their studies. *See* 8 C.F.R. § 214.2(f)(5)(i).

To maintain F-1 status, a student may not engage in certain activities specified by regulation, which include unauthorized employment, willfully failing to provide full and truthful information to DHS, and "[c]riminal activity." 8 C.F.R. § 214.1(e)–(g). "Criminal activity" constitutes a failure to maintain lawful status when it results in a "conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)." *Id.* § 214.1(g). A student who fails to maintain F-1 status is not afforded any period to prepare for departure from the United States. *See id.* § 214.2(f)(5)(iv).

If an international student does not engage in conduct that constitutes a failure to maintain F-1 status, DHS may terminate the student's status in three specific circumstances: (1) a waiver previously authorized on the student's behalf under 8 U.S.C. § 1182(d)(3) or (4) is

revoked; (2) a private bill is introduced in Congress to confer lawful permanent residence status; or (3) a notification is published in the Federal Register that identifies national security, diplomatic, or public safety reasons for terminating F-1 status. *Id.* § 214.1(d). "DHS cannot otherwise unilaterally terminate nonimmigrant status." *Isserdasani v. Noem*, No. 25-cv-283, 2025 WL 1118626, at *2 (W.D. Wis. Apr. 15, 2025) (citing *Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 185 n.100 (3d Cir. 2019)). Under the regulations, the revocation of a student's visa is not a ground for terminating the student's F-1 status. *See* C.F.R. § 214.1(d); ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010), available at https://perma.cc/ZM2S-R6Z6.

SEVIS is a centralized online database, managed by DHS's Student and Exchange Visitor Program ("SEVP"), that monitors international students' compliance with the terms of their F-1 status. *See* DHS, *About SEVIS*, Study in the States, https://perma.cc/49RX-SHX5.

## B. Factual History

Plaintiff is a citizen and national of a country in Latin America.[2] (Compl. ¶ 25 (Dkt. 1).) Since the fall of 2024, he has been enrolled as a full-time student in a graduate program at the University of Virginia. (Pl.'s Ex. A, Decl. of Pl. ¶¶ 3, 12 (Dkt. 5-3).) Beginning in 2009, Plaintiff has lawfully visited the United States several times. (*See id.* ¶¶ 6–9.) He first visited the United States in June 2009 on a tourist visa. (*Id.* ¶ 6.) In the summer of 2010, he attended an English language course in Massachusetts on an F-1 student visa. (*Id.* ¶ 7.) In January

---

[2] Plaintiff's public filings in this case do not identify his country of citizenship but state that it is not El Salvador. (Compl. ¶ 25.)

Pageid#: 130

2014, Plaintiff entered the United States with an F-1 student visa to attend an undergraduate program at a public university in the Midwest. (*Id.* ¶ 8; Compl. ¶ 25.) He graduated from that program in December 2015 with a Bachelor of Arts in Economics. (Decl. of Pl. ¶ 9.) Plaintiff's most recent F-1 visa was issued in 2017. (*Id.* ¶ 11.) It was set to expire in July 2029. (Pl.'s Ex. C at 2 (Dkt. 5-5).)

On April 4, 2025, the University of Virginia notified Plaintiff that his status on SEVIS had been changed to "TERMINATED" as of that same date. (Decl. of Pl. ¶ 14; *see* Pl.'s Ex. B, Decl. of Seth Hall ¶¶ 3–4 (Dkt. 5-4).) The "TERMINATION REASON" provided in the system read: "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." (Decl. of Seth Hall ¶ 3.) No government official had informed Plaintiff that his visa had been revoked, and University of Virginia officials confirmed they had not taken any action to terminate his status on SEVIS. (*Id.* ¶ 4; *see* Decl. of Pl. ¶ 16.) Plaintiff travelled internationally as recently as March 2025 and re-entered the United States without incident on March 13, 2025. (Decl. of Pl. ¶ 13.)

Plaintiff states that he is unaware of the reasons why his SEVIS record was terminated—he maintains that he has complied with all conditions necessary to maintain F-1 status. (*Id.* ¶ 16.) Plaintiff has no criminal history aside from one incident that occurred in 2015, while he was an undergraduate student in the United States. (Compl. ¶ 33; Decl. of Pl. ¶ 4.) He explains that he was arrested on suspicion of violating a municipal battery ordinance, which carried a maximum 180-day jail term, after he was assaulted at a college bar. (*Id.*) He asserts that he acted in self-defense, he pled not guilty, and the charges were dismissed. (*Id.*)

A local judge signed an expungement order on April 16, 2024. (*Id.*) Plaintiff states that he has truthfully disclosed the 2015 incident in every one of his interactions with immigration officials and that the government knew about the incident when it issued his most recent F-1 visa in 2017. (Compl. ¶ 34; Decl. of Pl. ¶¶ 10–11.)

On April 10, 2025—shortly after he learned about the termination of his SEVIS record—Plaintiff received an email from the U.S. Department of State's Bureau of Consular Affairs Visa Office.³ (Decl. of Pl. ¶ 15; Pl.'s Ex. C at 2.) The email began by stating that Plaintiff's F-1 visa "ha[d] been revoked" based on "additional information [that] became available after [his] visa was issued." (Pl.'s Ex. C at 2.) It did not elaborate on what that "additional information" was. The email then continued:

> The Bureau of Consular Affairs Visa Office has alerted the Department of Homeland Security's Immigration and Customs Enforcement, which manages the Student Exchange Visitor Program and is responsible for removal proceedings. They may notify your designated school official about the revocation of your F-1 visa.
>
> Remaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin.
>
> Given the gravity of this situation, individuals whose visa was revoked may wish to demonstrate their intent to depart the United States using the CBP Home App . . . .

(*Id.*) Plaintiff states that he does not know why his visa reportedly was revoked. (Decl. of Pl. ¶ 16.) To date, DHS has not initiated removal proceedings against him. (Compl. ¶ 35.)

---

³ The email was signed by the Consular Section of the U.S. Embassy in a Latin American country that was not Plaintiff's country of citizenship. (*See* Compl. ¶ 30; Pl.'s Ex. C at 2.)

Plaintiff states that, due to the termination of his F-1 status, he is no longer able to attend in-person classes for his graduate program, which will negatively affect his attendance and grades and place him at risk of losing his partial-tuition scholarship. (Decl. of Pl. ¶ 21.) This, he explains, will place him "in an extremely difficult financial and academic position." (*Id.*) Plaintiff further states that he has struggled to find a summer internship, which is an integral part of his graduate program, due to his loss of F-1 status. (*Id.* ¶ 22.) He reports that he will lose the career-development opportunities his graduate program provides if he is forced to leave the United States, which will harm his professional career. (*Id.* ¶ 23.) He explains that his "entire academic identity is rooted in the path [he has] built here in the United States, and the possibility of losing that feels overwhelming and deeply unsettling." (*Id.* ¶ 18.)

Plaintiff also states that he is experiencing high levels of stress and anxiety due to the uncertainty about his legal status in the United States. (*Id.* ¶¶ 17, 24.) He fears that the termination of his F-1 status will result in his detention by government authorities and deportation, potentially to a place other than his country of origin, as warned by the Bureau of Consular Affairs Visa Office. (*Id.* ¶¶ 19–20.) Because of these feared consequences, Plaintiff is "too scared to leave [his] home to see friends or purchase groceries." (*Id.* ¶ 24.) He states that "[t]his disruption has caused irreparable harm to both [his] academic trajectory and personal well-being, undermining years of effort and jeopardizing the continuation of [his] education." (*Id.*)

### C. Procedural History

On April 17, 2025, Plaintiff filed a complaint for declaratory and injunctive relief in this court against Kristi Noem, in her official capacity as Secretary of Homeland Security,

DHS, and Todd Lyons, in his official capacity as Acting Director of ICE. (*See* Compl.) He challenges both the termination of his F-1 status in SEVIS and the revocation of his F-1 visa. His complaint alleges six causes of action. Counts 1 through 4 assert that Defendants acted unlawfully when they terminated his SEVIS record. Count 1 alleges that Defendants violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), by terminating his SEVIS record without any statutory or regulatory authority. (*Id.* ¶¶ 41–44.) Count 2 alleges that Defendants violated the Due Process Clause of the Fifth Amendment by terminating his SEVIS record based on improper grounds, without notice of the facts that supported the termination, and without providing him an opportunity to respond. (*Id.* ¶¶ 45–49.) Count 3 alleges that Defendants violated the APA's procedural due process provision, 5 U.S.C. § 706(2)(B), by terminating Plaintiff's SEVIS record without proper process. (*Id.* ¶¶ 50–52.) Count 4 alleges that the termination of his SEVIS record should be set aside under the APA as arbitrary and capricious because Defendants failed to articulate any factual basis for the decision. (*Id.* ¶¶ 53–56.)

Counts 5 and 6 challenge the revocation of Plaintiff's F-1 visa. Count 5 asserts that the revocation of his F-1 visa without notice, an opportunity to respond, or any other process violated his procedural due process rights under the Fifth Amendment. (*Id.* ¶¶ 57–59.) And Count 6 alleges that the visa revocation was arbitrary and capricious in violation of the APA. (*Id.* ¶¶ 60–62.)

Plaintiff's complaint asks the court to declare that the termination of his SEVIS status violated the Fifth Amendment and APA; declare that he remains in lawful status; vacate and set aside Defendants' termination of his SEVIS status; issue an injunction ordering Defendants

to restore his SEVIS record and status; and order that Defendants reverse the revocation of his F-1 visa. (*Id.* at 15–16.) Plaintiff also asks the court to award him costs and attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(b). (*Id.* at 16.)

The same day he filed his complaint, Plaintiff also filed a motion for a temporary restraining order. (Dkt. 5.) The motion asks the court to temporarily enjoin Defendants from terminating Plaintiff's F-1 status under SEVIS, require Defendants to set aside the April 4, 2025 determination terminating his SEVIS record, order Defendants to take all steps to reinstate his SEVIS record as soon as possible, and enjoin Defendants from detaining Plaintiff or transporting him out of this court's jurisdiction. (*Id.* at 1–2.) Plaintiff does not ask the court to temporarily reinstate his F-1 visa—his motion focuses solely on his F-1 status recorded in SEVIS. (*See* Pl.'s Mem. in Supp. of Mot. for TRO at 3 (Dkt. 5-1).)

This court has jurisdiction under 28 U.S.C. § 1331.

## II. Standard of Review

Federal Rule of Civil Procedure 65(b) authorizes a district court, in limited circumstances, to issue a temporary restraining order without written or oral notice to adverse parties or their attorneys. Fed. R. Civ. P. 65(b)(1). "[A] temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999); *see Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

A party seeking a temporary restraining order under Rule 65(b) must satisfy two threshold requirements. First, the movant must point to "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage

will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Second, the "movant's attorney [must] certif[y] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

In addition, the party requesting a temporary restraining order must show that the four preliminary-injunction factors favor injunctive relief. *See Mogensen v. Welch*, 707 F. Supp. 3d 604, 609 (W.D. Va. 2023). He must demonstrate (1) by a "clear showing" that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm without preliminary relief; (3) that the balance of equities tips in his favor; and (4) that preliminary relief is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). The third and fourth factors "merge when the Government is the opposing party." *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

### III.    Analysis

As an initial matter, the court finds that Plaintiff has satisfied the two threshold requirements for a temporary restraining order under Rule 65(b). For the reasons discussed below, the court finds that specific facts in the sworn declarations Plaintiff has submitted in support of his motion—particularly Plaintiff's own declaration—clearly show he will suffer irreparable harm in the absence of immediate injunctive relief. Fed. R. Civ. P. 65(b)(1)(A). Plaintiff's counsel also has "certifie[d] in writing any efforts made to give notice and the reasons why it should not be required."[4] Fed. R. Civ. P. 65(b)(1)(B).

---

[4] One of Plaintiff's attorneys, Thomas Frampton, certified that he emailed the Acting U.S. Attorney for the Western District of Virginia copies of the complaint, motion for a temporary restraining order, and the memorandum and exhibits in support of the motion on April 17, 2025, before Plaintiff filed them in this court. (Decl. of Thomas Frampton ¶ 3 (Dkt.

In addition to satisfying those requirements, Plaintiff has made a sufficient showing that each of the four *Winter* factors supports granting temporary injunctive relief here.

**A. Likelihood of Success on the Merits**

Plaintiff argues that the termination of his F-1 status in SEVIS violated both the APA (Counts 1, 3, and 4) and the Due Process Clause of the Fifth Amendment (Count 2). When a complaint alleges multiple causes of action, a plaintiff need only show a likelihood of success on one claim to justify temporary injunctive relief. *See Abrego Garcia v. Noem*, – F. Supp. 3d –, 2025 WL 1014261, at *9 (D. Md. Apr. 6, 2025); *Variable Annuity Life Ins. Co. v. Coreth*, 535 F. Supp. 3d 488, 505 (E.D. Va. 2021); *Nabisco Brands, Inc. v. Conusa Corp.*, 722 F. Supp. 1287, 1292 n.4 (M.D.N.C.), *aff'd*, 892 F.2d 74 (4th Cir. 1989). Plaintiff has made a clear showing that he likely will succeed on the merits of at least one of his APA claims, so the court need not address the merits of his Fifth Amendment claim.

Based on the current record, it appears clear that Defendants had no lawful basis for terminating Plaintiff's F-1 status. The reason given for the termination in SEVIS reads: "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked." (Decl. of Seth Hall ¶ 3.) Neither of those stated reasons appears to be a valid ground for terminating Plaintiff's F-1 status under the applicable regulations.

---

5-9).) Frampton stated that he also disclosed Plaintiff's identity and date of birth to the Acting U.S. Attorney via email. (*Id.* ¶ 4.) He further stated that he attempted to contact the Acting U.S. Attorney or a representative by telephone on April 17 and left a voicemail when no one answered the office's main telephone number. (*Id.* ¶ 5.) Frampton informed the court that Plaintiff's attorneys would continue attempting to notify Defendants about the motion for a temporary restraining order but noted that Plaintiff sought emergency relief as quickly as possible. (*See id.* ¶ 8.)

First, as noted above, "criminal activity" justifies the termination of F-1 status when it results in a "*conviction* in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)." 8 C.F.R. § 214.1(g) (emphasis added). Plaintiff states that his criminal history is limited to the one incident in 2015, where he was arrested on suspicion of violating a misdemeanor battery ordinance that carried a maximum 180-day jail term. (Compl. ¶ 33; Decl. of Pl. ¶ 4.) He was never convicted of that offense—he pled not guilty, the charges were dismissed, and a judge entered an expungement order in April 2024. (*Id.*) Even if he had been convicted, the misdemeanor offense carried a maximum jail term of 180 days, so it was not punishable by "a sentence of more than one year imprisonment." 8 C.F.R. § 214.1(g). Thus, the 2015 incident did not constitute "criminal activity" as defined in § 214.1(g).

Nor does the purported revocation of Plaintiff's F-1 visa on its own appear to provide grounds for terminating his F-1 status under the applicable regulations. While the visa revocation would prevent Plaintiff from lawfully re-entering the United States from abroad, a student's SEVIS record and F-1 status are not necessarily controlled by the student's visa document. Other courts have recognized that 8 C.F.R. § 214.1(d), which identifies the methods government officials may use to terminate F-1 status, does not provide "authority to terminate F-1 student status in SEVIS based upon revocation of a visa." *Roe v. Noem*, No. CV 25-40, 2025 WL 1114694, at *3 (D. Mont. Apr. 15, 2025) (citing *Jie Fang*, 935 F.3d at 185 n.100); *see also Ajugwe v. Noem*, No. 8:25-cv-982, 2025 WL 1148689, at *3 (M.D. Fla. Apr. 18, 2025) (same). ICE itself has taken the same position, stating in policy guidance that "[v]isa

- 11 -

revocation is not, in itself, a cause for termination of the student's SEVIS record." ICE, Policy Guidance 1004-04 – Visa Revocations (June 7, 2010), https://perma.cc/ZM2S-R6Z6.

Because it appears that Defendants did not identify a lawful ground for terminating Plaintiff's F-1 status and SEVIS record, Plaintiff is likely to prevail on his claims that the termination failed to comply with the applicable statutory and regulatory framework and was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under the APA. 5 U.S.C. § 706(2)(A).[5]

### B. Irreparable Harm

"To establish irreparable harm, the movant must make a 'clear showing' that it will suffer harm that is 'neither remote nor speculative, but actual and imminent.'" *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991)). An injury is irreparable when it "cannot be fully rectified by the final judgment after trial." *Id.* (citation omitted).

Plaintiff has made a clear showing that he faces immediate, irreparable harm here. For one, the termination of his F-1 status and SEVIS record prevents him from participating fully in his graduate program, which in turn threatens his scholarship status and jeopardizes his academic and professional prospects. (Decl. of Pl. ¶¶ 21–24; *see id.* ¶ 18.) Multiple courts addressing motions to temporarily enjoin similar terminations of F-1 statuses and SEVIS

---

[5] The termination of an international student's SEVIS record is a "final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704, so this court has jurisdiction to review the decision under the APA. *See Jie Fang*, 935 F.3d at 180–85; *Doe v. Noem*, -- F. Supp. 3d --, 2025 WL 1141279, at *3 (W.D. Wash. Apr. 17, 2025); *Patel v. Bondi*, No. 1:25-CV-00101, 2025 WL 1134875, at *2 (W.D. Pa. Apr. 17, 2025); *Student Doe v. Noem*, No. 2:25-cv-01103, 2025 WL 1134977, at *5 (E.D. Cal. Apr. 17, 2025).

records have recognized that the loss of timely academic progress is alone sufficient to establish irreparable harm. *Isserdasani*, 2025 WL 1118626, at * 5 (citing *Liu v. Noem*, No. 25-cv-133, op. at 4 (D.N.H. Apr. 10, 2025)); *see also Doe*, 2025 WL 1141279, at *8 (collecting cases).

Further, Plaintiff will accrue unlawful presence time as long as he lacks lawful F-1 status. Once it reaches a certain point, unlawful presence time will bar his future admission and re-entry to the United States. *See* 8 U.S.C. § 1182(a)(9)(B). Other courts have found—and this court agrees—that the accrual of unlawful presence time is an irreparable harm because it may subject a person to lengthy re-entry bars that are not judicially reviewable. *See Doe*, 2025 WL 1141279, at *8 (collecting cases).

Beyond the immediate harms already caused by the termination of Plaintiff's SEVIS record, the threat of detention and deportation looms large. Plaintiff's expressed fear of detention and deportation appears well-founded. The April 10, 2025 email he received from the Bureau of Consular Affairs stated that ICE, which "is responsible for removal proceedings," was aware that his F-1 visa had been revoked. (Pl.'s Ex. C at 2.) It warned him that "[r]emaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation," that "deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States, and that "[p]ersons being deported may be sent to countries other than their countries of origin." (*Id.*) While removal by itself is not an irreparable harm, *see Nken*, 556 U.S. at 435,[6] removal

---

[6] In *Nken*, the Supreme Court explained that removal, standing alone, does not constitute irreparable injury under the traditional four-factor test for granting stays. 556 U.S. at 434–35. The Court explained that it reached that conclusion because removed persons "may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal." *Id.* at 435. Recent events, however, highlight the bleak reality that even a person whose removal was without legal justification

here would magnify the other harms Plaintiff has suffered and raise serious doubts about his ability to return to the United States to complete his course of study and pursue professional opportunities. *See Doe*, 2025 WL 1141279, at *8.

### C. Balancing of Equities and Public Interest

The balance of the equities and the public interest factors "merge when the Government is the opposing party." *Miranda*, 34 F.4th at 365 (quoting *Nken*, 556 U.S. at 435). The court finds that these two factors weigh in favor of Plaintiff. Defendants will suffer minimal hardship if the court temporarily sets aside the April 4, 2025 termination determination and orders Defendants to refrain from taking any further action based on that determination before the court holds a preliminary injunction hearing. And while the Executive Branch has broad authority to enforce immigration laws, there is no public interest in allowing them to act outside the law. *See Ajugwe*, 2025 WL 1148689, at *3; *Doe*, 2025 WL 1141279, at *9; *Ratsantiboon v. Noem*, No. 25-CV-01315, 2025 WL 1118645, at *3 (D. Minn. Apr. 15, 2025). Finally, temporarily enjoining Defendants from detaining Plaintiff will not disserve the public interest, as Plaintiff has no history of criminal convictions and poses no safety threat to the community.

\*   \*   \*

Because all four *Winter* factors favor temporary injunctive relief, the court grants Plaintiff's motion for a temporary restraining order. Finally, the court must address whether to require Plaintiff to post a bond. Rule 65(c) provides that a court may issue a temporary

---

may not be able to return to the United States once removed. *See Abrego Garcia v. Noem*, No. 25-1404, 2025 WL 1135112 (4th Cir. Apr. 17, 2025).

restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). A "district court retains the discretion to set the bond amount as it sees fit or waive the security requirement" altogether, as long as it articulates the reasons for the waiver. *Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013), *abrogated on other grounds by Winter*, 555 U.S. 7. The court finds it appropriate to waive the security requirement in this case, as the temporary restraining order will not cause Defendants to incur any significant monetary costs.

## IV. Conclusion

For the reasons outlined above, Doe's motion for a temporary restraining order is **GRANTED**. This court entered a Temporary Restraining Order at approximately 10:35 p.m. on April 17, 2025. It (1) ordered that Defendants' April 4, 2025 termination of Plaintiff's F-1 status and SEVIS record shall have no legal effect and shall not obstruct Plaintiff from continuing to pursue any activities he is authorized to pursue as an international student with F-1 status;[7] (2) enjoined Defendants from terminating Plaintiff's F-1 status under SEVIS; and (3) enjoined Defendants from arresting or detaining Plaintiff, transferring him out of the jurisdiction of the Western District of Virginia, removing him from the United States, or taking any other action as the result of the termination of his SEVIS record and F-1 status. The Temporary Restraining Order took effect immediately and will remain in effect until fourteen

---

[7] In his motion, Plaintiff also asks the court to require Defendants to take all necessary steps to reinstate his SEVIS record as soon as possible. If reinstating Plaintiff's SEVIS record is necessary to ensure that the April 4, 2025 termination decision has no legal effect and that Defendants do not impose further consequences based on that termination, Defendants must reinstate Plaintiff's F-1 status and SEVIS record as quickly as possible.

- 15 -

Case 3:25-cv-00023-JHY-JCH   Document 12   Filed 04/21/25   Page 16 of 16
Pageid#: 142

(14) days after the date of entry, subject to further extension by the court as may be appropriate.

The court will convert Plaintiff's motion for a temporary restraining order into a motion for a preliminary injunction. *See Toro Co. v. Textron, Inc.*, 703 F. Supp. 417, 418 (W.D.N.C. 1987). A hearing on the motion is scheduled for **May 1, 2025, at 10:00 a.m.** in Charlottesville, Virginia. Defendants shall file a response to Plaintiff's motion no later than 5 p.m., **April 24, 2025**, and Plaintiff shall file a reply no later than 5 p.m., **April 28, 2025**.

ENTERED this  21st  day of April, 2025.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE