CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
October 21, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| John Doe, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:25-cv-00023 |
| | ) | |
| Markwayne Mullin, in his official capacity as Secretary of Homeland Security, *et al.*,[1] | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

John Doe is a full-time international student currently enrolled in a graduate program at the University of Virginia. He has filed a second amended complaint for declaratory and injunctive relief against Markwayne Mullin, in his official capacity as Secretary of Homeland Security; the U.S. Department of Homeland Security ("DHS"); and David Venturella, in his official capacity as Acting Director of Immigration and Customs Enforcement ("ICE"). (Dkt. 67.) Doe alleges that Defendants unlawfully revoked his F-1 visa and unlawfully terminated his record in the Student and Exchange Visitor Information System ("SEVIS").

The matter is before the court on Defendants' motion to dismiss Doe's second amended complaint under Federal Rules of Civil Procedure 12(b)(1) for mootness and 12(b)(6) for failure to state a claim. (Dkt. 68.) For the reasons below, the court will deny Defendants'

[1] The second amended complaint named Kristi Noem, former Secretary of Homeland Security, and Todd Lyons, former Acting Director of ICE, as defendants. Markwayne Mullin is now the Secretary of Homeland Security and David Venturella is now the Acting Director of ICE. Accordingly, they have been substituted as defendants in this case. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."); *King v. McMillan*, 594 F.3d 301, 309–10 (4th Cir. 2010).

12(b)(1) motion to dismiss, grant Defendants' 12(b)(6) motion to dismiss, and grant in part and deny in part Defendants' motion to strike Doe's requests for relief.

## I. Background

The court assumes familiarity with the background of this case as set forth in its previous memorandum opinion resolving Defendants' prior motion to dismiss. (Feb. 28, 2026 Mem. Op. at 2–8 (Dkt. 65).) Only the key facts and procedural history are summarized below.

### A. Factual History

Doe is a citizen of a Latin American country. (Second Am. Compl. ¶ 25 (Dkt. 67).) Since the fall of 2024, he has been enrolled as a full-time student in a graduate program at the University of Virginia on an F-1 visa. (*Id.* ¶¶ 25–26.) On April 4, 2025, University of Virginia officials informed Doe that his status in SEVIS had been terminated. (*Id.* ¶ 29.) The reason provided for termination was "OTHERWISE FAILING TO MAINTAIN STATUS" because Doe had been "identified in [a] criminal records check and/or has had [his] VISA revoked." (*Id.*) At that time, he had not received any notice of visa revocation. (*Id.*) Six days later, Doe received an email from the Consular Section of the U.S. Embassy in a country that was not Doe's country of origin, appearing to inform him that his F-1 visa had been revoked. (*Id.* ¶ 30.) At the time of the filing of the initial complaint, Doe was unaware of the actual or purported basis for the termination of his status in SEVIS. (*Id.* ¶ 32.) Doe's only criminal history was an arrest for a misdemeanor battery from a decade ago, in which the charges were dismissed and then expunged in 2024. (*Id.* ¶ 33.) DHS has not initiated removal proceedings against Doe. (*Id.* ¶ 35.)

Doe's SEVIS termination has disrupted his schooling, hindered his ability to find a summer internship, prevented him from visiting his family, and caused him acute stress and anxiety. (*Id.* ¶¶ 37–38.) He has not attended class in person and is fearful of seeing friends or going to the grocery store. (*Id.* ¶ 38.)

**B. Procedural History**

On April 17, 2025, Doe filed a complaint for declaratory and injunctive relief against Defendants, challenging the termination of his F-1 student status in SEVIS. (Compl. (Dkt. 1).) He simultaneously moved for a temporary restraining order ("TRO"). (Dkt. 5.) The court granted an *ex parte* TRO on the same day enjoining Defendants from terminating Doe's F-1 status, ordering that the prior termination of his SEVIS record and F-1 status have no legal effect, and prohibiting Defendants from arresting, detaining, or removing Doe from the court's jurisdiction or the United States as a result of the termination. (Dkt. 8 at 2.)

The court also converted the TRO motion into a motion for preliminary injunction, (*id.*), and subsequently granted the motion. (Dkt. 33.) The injunction prohibits Defendants from terminating or reversing the reinstatement of Doe's SEVIS record without the court's approval and bars them from taking any action inconsistent with Doe maintaining lawful F-1 status during the pendency of the litigation. (*Id.* at 2–3.)

On July 21, 2025, Doe filed an amended complaint alleging seven claims. (First Am. Compl. (Dkt. 34).) Count 1 alleged that Defendants violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), by terminating his SEVIS record without statutory or regulatory authority. (*Id.* ¶¶ 41–44.) Count 2 alleged that Defendants violated the Due Process Clause of the Fifth Amendment by terminating his SEVIS record based on improper grounds,

without notice of the facts that supported the termination, and without providing him with an opportunity to respond. (*Id.* ¶¶ 45–49.) Count 3 alleged that his SEVIS record termination should be set aside under the APA as "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B), due to the due process violation alleged in Count 2. (*Id.* ¶¶ 50–52.) Count 4 alleged that the termination of his SEVIS record should be set aside under the APA as arbitrary and capricious because Defendants failed to articulate any factual basis for the decision. (*Id.* ¶¶ 53–56.) Count 5 asserted that the revocation of his F-1 visa without notice, an opportunity to respond, or any other process violated his procedural due process rights under the Fifth Amendment. (*Id.* ¶¶ 57–59.) And Count 6 alleged that the visa revocation was arbitrary and capricious in violation of the APA. (*Id.* ¶¶ 60–63.) Finally, Count 7 asserted a due process "stigma-plus" claim, alleging that Defendants communicated false claims about Doe to university and consular officials, jeopardizing his education and causing the termination of his visa. (*Id.* ¶¶ 64–68.)

The court granted in part and denied in part Defendants' 12(b)(1) motion to dismiss and granted their 12(b)(6) motion to dismiss. (Feb. 28, 2026 Mem. Op. at 25.) Defendants argued that case was moot for three reasons: (1) ICE had retroactively reactivated Doe's terminated SEVIS record; (2) DHS had promulgated an April 26, 2025 policy stating that ICE would not revoke SEVIS records except under specified conditions; and (3) a sworn declaration by Akil Baldwin, an ICE official, stated that consistent with the April 26, 2025 policy, "ICE will not re-terminate SEVIS records based solely on the NCIC record that led to the initial termination." (*Id.* at 10–11.) The court rejected all three arguments, finding that the voluntary cessation doctrine applied and that neither the April 2025 ICE policy nor Baldwin's

declaration made it "absolutely clear" that the challenged conduct would not recur, given Baldwin's reference to the non-binding April 2025 policy. (*Id.* at 12–14.) The court then determined that the Immigration and Nationality Act, 8 U.S.C. § 1201(i), stripped courts of jurisdiction to review visa revocations, thereby divesting the court of subject matter jurisdiction over Doe's claims challenging his F-1 visa revocation. (*Id.* at 15–17.) The court also found that Doe had failed to state a due process claim because he had not sufficiently alleged a property interest in his F-1 visa, SEVIS record, or public education. (*Id.* at 19–25.) The court dismissed Counts 5 and 6 with prejudice and Counts 2, 3, and 7 without prejudice. (*Id.* at 25.) The court also granted Doe leave to file a second amended complaint. (*Id.*)

Doe filed his second amended complaint on March 12, 2026. (Dkt. 67.) The second amended complaint includes additional factual allegations regarding the University of Virginia's policies for student discipline. (Second Am. Compl. ¶ 26.) Count 1 alleges Defendants violated the APA by terminating Doe's SEVIS record without statutory or regulatory authority. (*Id.* ¶¶ 41–44.) Count 2 alleges Defendants violated Doe's Fifth Amendment procedural due process rights by terminating his SEVIS record and F-1 status, based on a protected property interest in "his continued education and ability to travel freely to and from class." (*Id.* ¶¶ 45–48.) Count 3 asserts another APA claim against Defendants alleging the termination of Doe's SEVIS record was arbitrary and capricious. (*Id.* ¶¶ 49–52.) Doe requests declaratory and injunctive relief as well as costs and attorney's fees. (*Id.* at 16.)

Defendants moved to dismiss on March 26, 2026. (Dkt. 68.) In support of its motion, Defendants submitted a new declaration by Baldwin. (Mar. 26, 2026 Baldwin Decl. (Dkt. 69-1).) Defendants seek to dismiss all three claims for mootness under Rule 12(b)(1) and Count 2

for failure to state a claim under Rule 12(b)(6). (*See* Defs.' Supp. Mem. at 1 (Dkt. 69).) Doe responded in opposition on March 30, 2026. (Dkt. 70.) Defendants replied on April 6, 2026, (Dkt. 71), and Doe filed a surreply on April 14, 2026 (Dkt. 74).

## II. Standard of Review

### A. 12(b)(1) Motion to Dismiss

Under Rule 12(b)(1), a defendant can lodge either a facial or a factual challenge to subject matter jurisdiction. *See Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 620–21, 621 n.7 (4th Cir. 2018); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A facial challenge asserts that a complaint fails to allege facts on which to base subject matter jurisdiction, *see Hutton*, 892 F.3d at 621 n.7, in which case the court takes the factual allegations of the complaint as true, *see Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). But a factual challenge argues "that the jurisdictional allegations made in the complaint are not true." *Brunelle v. Norfolk S. Ry. Co.*, No. 2:18-cv-00290, 2018 WL 4690904, at *2 (E.D. Va. Sept. 28, 2018). In such a challenge, a district court may "regard the pleadings as mere evidence" and "consider evidence outside the pleadings." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009) (noting that courts may "go beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings, such as affidavits"). Here, Defendants make only a factual attack on subject-matter jurisdiction. (Defs.' Supp. Mem. at 7.)

### B. 12(b)(6) Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). It does not "resolve contests

surrounding the facts or the merits of a claim." *Doriety for Est. of Crenshaw v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

**C. 12(f) Motion to Strike**

The court construes Defendants' request to strike parts of the second amended complaint as a motion under Rule 12(f). A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts have broad discretion in disposing of motions to strike, but such motions "are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy." *Waste Mgmt. Holdings, Inc. v. Gilmore,* 252 F.3d 316, 347 (4th Cir. 2001) (cleaned up). "[A]s far as motions to strike pleadings on the basis of immateriality are concerned, a matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation." *N.C. Shellfish Growers Ass'n v. Holly Ridge Assocs., L.L.C.,* 200 F. Supp. 2d 551, 554 (E.D.N.C. 2001) (citation omitted). "[C]ourts generally require the moving party

to establish that the materials to be struck prejudice the moving party in some way." *Alston v. TransUnion*, No. 16-491, 2017 WL 464369, at *1 (D. Md. Feb. 1, 2017) (citation omitted).

## III. Analysis

### A. Subject Matter Jurisdiction

Defendants argue that this court lacks subject matter jurisdiction because the challenged conduct will not recur, rendering all three of Doe's claims moot. (Defs.' Supp. Mem. at 8–9.) They assert that the new Baldwin Declaration makes clear that the conduct will not recur. (*Id.*) But the court finds that this case still presents a live controversy for the reasons below.

Article III of the U.S. Constitution "limits the federal judicial power to 'Cases' or 'Controversies.'" *Lancaster v. Sec'y of Navy*, 109 F.4th 283, 288–89 (4th Cir. 2024). "A case or controversy dissipates when it becomes moot," or "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* at 289 (quoting *Williams v. Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013)). "For mootness to occur, events transpiring while the matter is pending must 'make[ ] it impossible for the court to grant any effectual relief to the plaintiff.'" *Id.* (quoting *Williams*, 716 F.3d at 809). Voluntary cessation of challenged conduct by a defendant, however, does not moot a case "if there is a reasonable chance that the behavior will resume." *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 162 (4th Cir. 2021). A defendant who voluntarily ceases challenged conduct "bears the formidable burden of showing that it is *absolutely clear* the allegedly wrongful behavior could not reasonably be expected to recur" before the controversy can be considered moot. *Friends of the Earth v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (emphasis added). This

requirement "holds for governmental defendants no less than for private ones." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024).

Defendants argue that the new Baldwin Declaration is additional evidence "mak[ing] ICE's future conduct regarding Doe absolutely clear . . . ." (Defs.' Supp. Mem. at 9.) The declaration drops any reference to ICE's April 26, 2025 SEVIS policy and now only states that "[i]t has been and continues to be ICE's position that it will not re-terminate [Doe]'s SEVIS record based solely on the National Crime and Information Center record that led to the initial termination or solely on any related visa revocation that is effective upon departure." (Mar. 26, 2026 Baldwin Decl. ¶ 2.) While the court had found Baldwin's reference to the April 2025 SEVIS policy to be hedging that fell short of the voluntary cessation exception's strict standard, (*see* Feb. 28, 2026 Mem. Op. at 13), removing that reference does not fully resolve the court's concerns.

The Baldwin Declaration only represents ICE's current and past position and "[n]othing in these materials prevents ICE from altering its 'position' or 'plans' tomorrow—or terminating [Doe]'s SEVIS record based on his [decade-old] arrest alongside other inadequate factors." *Patel v. Lyons*, 827 F. Supp. 3d 1, 11 (D.D.C. 2026); *see also Presidents' All. on Higher Educ. and Immigr. v. Noem*, 824 F. Supp. 3d 168, 191 (D. Mass. 2026) ("This statement promises only that ICE will not use the past NCIC hits . . . and the resulting visa revocations as grounds to re-terminate a SEVIS record; it makes no representation that ICE will not terminate SEVIS records in the future based on other existing or new NCIC hits or new visa revocations."); *Saxena v. Noem*, No. 5:25-CV-05035, 2026 WL 84248, at *5 n.4 (D.S.D. Jan. 12, 2026); *Doe #1 v. Noem*, Civ. No. 25-cv-2998, slip op. at 9–10 (D.N.J. Mar. 25, 2026). The new

Baldwin Declaration still does not meet the demanding standard for voluntary cessation because it does not sufficiently rule out the possibility that the government will change its position in the future or rely on an impermissible ground to terminate Doe's SEVIS record or status. *Cf. Fikre*, 601 U.S. at 242 ("[T]he government's representation that it will not relist Mr. Fikre [on the No-Fly List] based on 'currently available information' may mean that his past actions are not enough to warrant his relisting. But . . . none of that speaks to whether the government might relist him if he does the same or similar things in the future . . . ."). Therefore, the court will deny Defendants' 12(b)(1) motion to dismiss all three Counts.

**B. Failure to State a Claim**

Next, Defendants moved to dismiss Count 2 of the second amended complaint because Doe does not sufficiently allege a constitutionally protected property interest in his public education. (Defs.' Supp. Mem. at 9–11.) Defendants argue that even if Doe has a property interest in his public education, he was never deprived of that interest because he remains enrolled in school. (*Id.* at 11–12.) Defendants further contend that Doe fails to allege that DHS or ICE terminated Doe's enrollment, or that they owed him due process as part of the termination of Doe's education.[2] (*Id.* at 12.) The court agrees that Doe does not sufficiently allege a property interest and will grant Defendants' 12(b)(6) motion to dismiss Count 2.

[2] Doe contends that Defendants' latter two arguments are waived under Rule 12(g)(2) because they were not raised in Defendants' previous motion to dismiss. (Pl.'s Br. Opp. at 4–5.) But waiver only applies to Rule 12 defenses and objections that were "available to the party but omitted from its earlier motion." Fed. R. Civ. P 12(g). The filing of an amended complaint "may contain new information or different allegations making it subject to a defense or objection that was not previously apparent to the movant." 5C *Wright & Miller's Federal Practice & Procedure* § 1388 (3d ed. 2026). While the court does not rule today on the merits of Defendants' latter two arguments, Rule 12(g) does not bar the court from considering them.

"To adequately allege a Fifth Amendment procedural due process claim," a plaintiff "must allege that she (1) lost 'something that fits into one of the three protected categories: life, liberty, or property,' and (2) did not 'receive the minimum measure of procedural protection warranted under the circumstances.'" *Strickland v. United States*, 32 F.4th 311, 347 (4th Cir. 2022). A liberty or property interest is "created" and "defined by existing rules or understandings that stem from an independent source such as state law." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Paul v. Davis*, 424 U.S. 693, 709 (1976)).

Another court in this district has explained that "it is undisputed that the Commonwealth of Virginia has not created a property interest in a continued public university education" by statute or case law. *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:21-cv-00378, 2024 WL 1417977, at *9 (W.D. Va. Apr. 2, 2024). Instead, "in the absence of a state statute, a plaintiff can plead an 'independent source' sufficient to withstand a motion to dismiss by alleging that the university at issue, through its policies or practices, does not expel, suspend, or dismiss students without cause." *Id.* at *10. For example, in *Doe v. Virginia Polytechnic Institute and State University*, the court found that the plaintiff sufficiently alleged a protected property interest by citing to "specific references to Virginia Tech's Student Code of Conduct," which taken together, "provid[ed] for the sanction of dismissal solely as an outcome of the Student Conduct Process" and "created an expectation that students could only be dismissed after a finding is made that a student violated the Code." *Id.* at *12 (citation omitted).

In his second amended complaint, Doe alleges that "[u]pon enrollment, both Doe and the University of Virginia agreed to be bound by a detailed set of policies and regulations setting forth, *inter alia*, grounds for discipline, and robust formal procedural protections should

the University or the graduate school seek to discipline, suspend, or expel Doe." (Second Am. Compl. ¶ 26.) He further alleges that "UVA has implemented a longstanding custom of not suspending, expelling, or dismissing students without cause and robust due process protections." (*Id.*)

The fact that the University of Virginia has detailed procedures for student discipline and expulsion does not by itself create a protected property interest. "'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Instead, the question is whether the university has policies or practices demonstrating that it "does not expel, suspend, or dismiss students without cause." *Doe*, 2024 WL 1417977, at *10. Doe's second amended complaint contains only one sentence alleging that the University of Virginia has such a "longstanding custom," (Second Am. Compl. ¶ 26), and does not point to any specific provision of a student code of conduct or comparable policy that would provide a factual basis for this allegation. By contrast, in *Doe v. Virginia Polytechnic Institute and State University*, the plaintiff cited specific provisions of Virginia Tech's student code that established "an expectation that students could only be dismissed after a finding is made that a student violated the Code." 2024 WL 1417977, at *12 (citation omitted). In particular:

> First, Doe alleges that the Code provides that, upon a complaint or conduct referral, Student Conduct will review the conduct referral to determine if there is information regarding behavior that may violate the Student Code of Conduct and thus warrants resolution within the conduct system. Second, a section of the Code outlined procedures to address behavior that is alleged to have violated university policy, including a formal hearing, in which a student is entitled to a number of procedural guarantees and opportunities. Third, the Code lists a number of sanctions that might be imposed during the Student Conduct Process, including but not limited to dismissal. Doe argues that these

> provisions, taken together, provide for the sanction of dismissal solely as an outcome of the Student Conduct Process.

*Id.* (cleaned up).

Furthermore, the plaintiff in *Doe v. Virginia Polytechnic Institute and State University* alleged that the university's *own procedures* were inadequate when the university *itself* deprived him of his protected property interest in education. *See id.* at *12–*13. Doe similarly alleges a property interest in his public education owed to him by the University of Virginia, but he argues that it was DHS and ICE, not the University, that deprived him of his property interest without due process. (Second Am. Compl. ¶ 48.) As it stands, Doe has not adequately alleged facts demonstrating that it was *Defendants'* lack of due process *owed to Doe* that deprived him of a property interest.

While the Fourth Circuit case law in this area is limited, the court finds that Doe's allegation is too conclusory to state a claim for a protected property interest. Therefore, the court grants Defendants' 12(b)(6) motion to dismiss as to Count 2 without prejudice.[3]

**C. Motion to Strike**

In the alternative, Defendants seek to strike two sections of Doe's Prayer for Relief. (Dkt. 68 at 1.) First, they argue that the requested injunctive relief is an overly vague "obey-the-law" injunction that does not comply with Federal Rule of Civil Procedure 65(d)'s requirements. (Defs.' Supp. Mem. at 12–13.) Furthermore, they contend that DHS lacks the authority to reverse the revocation of Doe's F-1 visa or restore his visa because the

[3] Because the court finds that Doe has not sufficiently alleged a constitutionally protected property interest, it is unnecessary to address Defendants' other two arguments that Doe failed to state a claim. (*See* Defs.' Supp. Mem. at 11–12.) However, should Doe choose to amend Count 2 of the second amended complaint, Defendants are free to raise these arguments again, including the potential traceability issue. (*See id.* at 12 n.5.)

Department of State issues visas and is not a party to this case, and that the court had already ruled that it lacked jurisdiction to review the visa revocation. (*Id.* at 13.) Doe did not respond to these arguments in his opposition or surreply.

Rule 65(d) applies to "[e]very *order* granting an injunction" and is not a pleading requirement. Fed. R. Civ. P. 65(d) (emphasis added). "[T]he obligation to provide reasonable detail applies only to the order for injunctive relief and does not mean that plaintiff must be any more specific in drafting the complaint than generally is required by Rule 8." 11A *Wright & Miller's Federal Practice & Procedure* § 2955 (3d ed. 2026) (footnotes omitted). If the court grants permanent injunctive relief to Doe, any order that issues will comply with Rule 65. Defendants' motion to strike will be denied as to section 4 of Doe's Prayer for Relief.

As for the demand that DHS reverse, restore, or facilitate the reversal or restoration of Doe's visa, the court previously found that it lacked subject matter jurisdiction over Doe's visa revocation and dismissed related claims with prejudice. (Feb. 28, 2026 Mem. Op. at 15–17.) Therefore, the court agrees that this paragraph of the Prayer for Relief is redundant and immaterial. The court will grant Defendants' motion to strike section 5 of Doe's Prayer for Relief.

## IV. Conclusion

For these reasons, the court **DENIES** Defendants' 12(b)(1) motion to dismiss. The court **GRANTS without prejudice** Defendants' 12(b)(6) motion to dismiss as to Count 2. The court will grant Doe leave to amend only as to Count 2 of the second amended complaint within 21 days of the court's forthcoming order. If no amendment is filed, then only Counts 1 and 3 of the second amended complaint will proceed. Defendants' motion to strike portions

of the second amended complaint is **GRANTED** as to section 5 of Doe's Prayer for Relief and **DENIED** as to section 4 of Doe's Prayer for Relief in the second amended complaint.

An appropriate Order will issue.

**ENTERED** this 21st day of October, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE